UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KIMBERLY S., | * | |
|    Plaintiff, | * | |
| v. | * | Civil Action No. EA-23-1404 |
| COMMISSIONER, SOCIAL SECURITY, | * | |
|    Defendant. | * | |

**MEMORANDUM OPINION**

On May 25, 2023, Plaintiff petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits. ECF No. 1. This case was referred to a United States Magistrate Judge with the parties' consent. 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). Pending before the Court is Plaintiff's motion for summary judgment, which is fully briefed. ECF Nos. 9-10. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, for the reasons set forth below, Plaintiff's motion is denied and the Commissioner's decision is affirmed.

**I.   Background**

    **A.   Procedural History**

On June 28, 2018, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, claiming that she was unable to work due to post-traumatic stress disorder, bipolar disorder, social anxiety, depression, arthritis, "AC joint reconstruction" of the left shoulder, insomnia, nightmares, rapid emotional cycling,

and panic attacks. ECF Nos. 8-4 at 3-4 and 8-6 at 2.[1] She originally alleged an onset date of November 14, 2016, but later amended it to December 28, 2018. ECF No. 8-6 at 2, 32.

Plaintiff's application was initially denied by the SSA on December 6, 2018, and again on reconsideration on April 12, 2019. ECF No. 8-5 at 2-5, 7-9. On July 23, 2019, Plaintiff filed a written request for a hearing before an Administrative Law Judge (ALJ), and following a hearing on February 19, 2020, the Honorable Clary Simmonds denied Plaintiff's application for benefits on April 2, 2020. ECF Nos. 8-3 at 18-38 and 8-5 at 10-11, 92-97. On May 26, 2020, Plaintiff filed a Request for Review to the Appeals Council, which was denied on June 3, 2020. ECF Nos. 8-3 at 2-8 and 8-7 at 136-138. Plaintiff then filed an appeal in the United States District Court for the District of Maryland on July 23, 2020. Civil Action No. DLB-20-2152 (D. Md.); ECF No. 8-13 at 2-5. Following the SSA Commissioner's filing of a Consent Motion to Remand, the Honorable Deborah L. Boardman remanded the case by Order dated June 22, 2021. Civil Action No. DLB-20-2152 (D. Md.), ECF Nos. 17 and 18. Upon remand, the Appeals Council directed the ALJ to, among other things, "give further consideration to the claimant's maximum residual functional capacity" and, if warranted, obtain evidence from a vocational expert.[2] ECF No. 8-12 at 12.

---

[1] Record citations refer to the Court's Case Management/Electronic Case Files system (ECF). ECF page numbers refer to the pagination printed at the top of the cited document.

[2] The residual functional capacity assessment is a determination of a claimant's "remaining capacity to do sustained work activities despite . . . physical or mental impairments." *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 169 (4th Cir. 2018); *see also* 20 C.F.R. § 404.1545(a)(1), (3)-(4). In evaluating a claimant's physical residual functional capacity, the ALJ assesses the nature and extent of physical limitations by considering the ability to perform "certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." 20 C.F.R. § 404.1545(b). In evaluating a claimant's mental residual functional capacity, the ALJ assesses the nature and extent of mental limitations with respect to activities such as "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(c).

On July 20, 2022, the ALJ held a second administrative hearing and received testimony from Plaintiff and a vocational expert. ECF No. 8-12 at 35-71. On August 31, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant timeframe. *Id.* at 12-27. On October 4, 2022, Plaintiff filed Written Exceptions to the Appeals Council, which were denied on March 24, 2023. *Id.* at 2-8. The ALJ's August 31, 2022 decision therefore constitutes the final, reviewable decision of the SSA. *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Plaintiff subsequently initiated the present appeal. ECF No. 1.

**B.     Statutory Framework**

The Social Security Act authorizes disability insurance benefit payments to every insured individual who "'is under a disability.'" *Cleveland* v. *Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Through this process, an ALJ evaluates, in order, whether the claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

3

### C. The ALJ's Decision

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 14, 2016. ECF No. 8-12 at 15. At step two, the ALJ found that Plaintiff has severe impairments due to depression, anxiety, bipolar disorder, and post-traumatic stress disorder, all of which significantly limit her ability to perform basic work activities. *Id.* The ALJ also determined that Plaintiff suffers from non-severe impairments in her back, abdomen, left knee, and left shoulder, as well as mild hearing loss and migraine headaches. *Id.* at 15-16. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 17-18. The ALJ found that that Plaintiff has moderate limitations due to her severe and non-severe impairments. *Id.* However, the ALJ concluded that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with . . . nonexertional limitations."[3] *Id.* at 18-19. At step four, the ALJ determined that Plaintiff was not capable of performing past relevant work as a computer programmer (DOT 030.162-010), stock clerk (DOT 299.367-014), teacher aid II (DOT 249.367-074), coffee shop counter attendant (DOT 311.477-014), apparel stock clerk (DOT 299.667-014), or computer systems analyst (DOT 030.167-014).[4] *Id.* at 26. At step five, the

---

[3] The ALJ identified the following nonexertional limitations: "the claimant can perform simple routine repetitive tasks that do not involve more than occasional simple decision making; can occasionally interact with co-workers, and occasionally work in tandem with others; can occasionally interact with the general public and frequently interact with supervisors; can perform work that does not require a high volume production rate pace or hourly quota such as assembly line work and can maintain concentration, persistence and pace in two hour increments and time off task can be accommodated with normal breaks and lunch; and she can tolerate occasional changes to a routine work setting." ECF No. 8-12 at 18-19.

[4] The "DOT" is the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of*

4

ALJ found that, considering her "age, education, work experience, and residual functional capacity," Plaintiff could perform other jobs that exist in significant numbers in the national economy. *Id.* at 26-27. Therefore, the ALJ concluded that Plaintiff is not disabled as defined under the Social Security Act.[5] *Id.* at 27.

## II.   Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio* v. *Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102

---

*Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." *Pearson* v. *Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015) (citing U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) and *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)).

[5] Pursuant to 20 C.F.R. § 404.967, Plaintiff requested an Appeals Council review by filing exceptions to the ALJ's decision on October 4, 2022. ECF No. 8-14 at 72-79. By letter dated March 24, 2023, the Appeals Council denied Plaintiff's request, finding that the ALJ's decision was consistent with applicable rules, regulations, and Social Security Rulings. ECF No. 8-12 at 2-3. As noted, *see supra* p. 3, the ALJ's decision therefore constitutes the Commissioner's final, reviewable decision.

(2019). Under this standard of review, substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, *see, e.g.*, *Mascio*, 780 F.3d at 636-637, an "elaborate or even sophisticated" explanation is not required, *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**III.   Discussion**

On appeal, Plaintiff argues that the ALJ erred by failing to incorporate the need for a service dog in the residual functional capacity assessment and by improperly discounting her mental limitations based on the lack of objective evidence. ECF No. 9-1 at 7. Each argument is addressed in turn below.

### A. Service Dog

Plaintiff first argues that the ALJ failed to incorporate her need for a service dog into the residual functional capacity assessment despite receiving evidence that Plaintiff has a medical need for such a dog.[6] *Id.* at 9. Plaintiff contends that other courts have held that when a service dog is medically necessary, it must be considered in the claimant's residual functional capacity assessment. *Id.* at 10. Plaintiff also notes that during the hearing, the vocational expert testified that an individual who requires a support or service animal to be present while working "would not be able to obtain, maintain, or sustain competitive full-time work utilizing any type of assistive device or animal." *Id.*; *see also* ECF No. 8-12 at 68.

The Commissioner argues, on the other hand, that the ALJ considered the entire record, discussed Plaintiff's dog at length, and concluded that there was no evidence that Plaintiff had a medical need for the assistance of a dog to work. ECF No. 10 at 6. The Commissioner further contends that precedential court and agency decisions preclude assessment of whether a disability insurance benefits claimant could perform work with a reasonable accommodation under the Americans with Disabilities Act of 1990, as amended (ADA). *Id.* at 7-8.

In rendering her decision, the ALJ engaged in the required five-step process and outlined the basis for each of her findings. As noted, *see supra* pp. 4-5, the ALJ found that Plaintiff has both severe and non-severe impairments that provide moderate limitations, but that she has the residual functional capacity to perform a full range of work at all exertional levels but with the identified nonexertional limitations.

---

[6] *See supra* p. 2 n.2 for a discussion of what a "residual functional capacity assessment" determination entails.

With respect to Plaintiff's dog, the ALJ concluded that Plaintiff's dog "Tank is not a medically necessary 'service' animal." ECF No. 8-12 at 22. The ALJ noted that Plaintiff had requested a service dog and a mental health provider had noted that "she would benefit" from a dog but concluded that those pieces of evidence were insufficient to support a finding that Tank is a service dog. *Id.* The ALJ cited the lack of evidence in the record regarding the medical need for a service dog and the absence of fundamental information, such as when Tank began providing services, what services he provides, and for what specific condition. *Id.* Instead, the ALJ noted that Plaintiff

> testified that the dog helps her by requiring her to leave the house so she can get him exercise and so she can buy food for him and the other dogs she has. She testified that he gets between her and situations that make her feel unsafe and that he senses when she is going to have a panic attack. These functions do not support that he allows her to overcome functional limitations in order to work.

*Id.* at 23. Thus, the ALJ did "not find any evidence that the claimant's functional limitations require her to have assistance of a dog in order to work" and therefore rejected Plaintiff's "request for an on the record decision based on the dog being a service animal."[7] *Id.*

As the Commissioner correctly notes, Plaintiff did not establish that her dog Tank enables her to perform any work-related functions that she would otherwise be unable to do without the dog. *See* 20 C.F.R. § 404.1545(a) (stating that a residual functioning capacity assessment addresses impairments that "may cause physical and mental limitations that affect what you can do in a work setting"). Here, although Plaintiff's psychologist stated that a service dog "would

---

[7] Plaintiff's argument that the ALJ erroneously analyzed the service dog in the context of an impairment related work expense is unavailing. ECF No. 9-1 at 12. Nothing in the record reflects that the ALJ discussed the medical necessity of a service dog in connection with an impairment-related work expense, an analysis that is tied to assessment of a claimant's ability to engaged in substantial gainful activity. *See*, *e.g.*, 20 C.F.R. § 404.1574(b). Instead, the ALJ's decision addressed Plaintiff's dog Tank in connection with Plaintiff's residual functional capacity assessment.

be beneficial as part of her treatment," there is no evidence that Plaintiff was ever prescribed a service dog or that any doctor affirmatively found one to be necessary for her to work.  ECF Nos. 8-11 at 235 and 8-12 at 22.  To the contrary, the State agency physicians who reviewed Plaintiff's record opined that she was able to understand and follow simple job instructions, make basic job-related decisions, perform work activities with few interpersonal demands, and adjust appropriately to workplace changes with advanced notice, and neither physician indicated that a dog would have any impact on her ability to perform these work-related functions.  ECF No. 8-4 at 12, 29.  The ALJ found these opinions to be "persuasive" in conducting the residual functioning capacity assessment.  ECF No. 8-12 at 24.

      The cases upon which Plaintiff relies do not compel a different result.  Plaintiff acknowledges that there is no binding precedent from the United States Court of Appeals for the Fourth Circuit that requires an ALJ to consider an individual's service animal in a person's residual functioning capacity assessment.  ECF No. 9-1 at 9.  She also acknowledges that "other district courts have determined that a service dog must be medically necessary to be considered in the individual's [residual functional capacity assessment]."  *Id.* at 9-10 (citing *Santos* v. *Colvin*, Civil Action No. 3:12-CV-05827-KLS, 2013 WL 5176846 (W.D. Wash. Sept. 12, 2013); *Payano* v. *Colvin*, Civil Action No. 2:15-CV-00294-RFB-GWF, 2017 WL 4778593 (D. Nev. Oct. 23, 2017)).  Plaintiff argues that when there is evidence of prescription of the dog from a medical provider, the service animal must be considered in the individual's residual functioning capacity assessment, yet she also concedes that a letter from a medical provider "is insufficient to establish that the service dog is medically necessary."  *Id.* at 10 (citing *Payano*, 2017 WL 4778593 and *Rentfro* v. *Colvin*, Civil Action No. 14-CV-3015, 2015 WL 12868081 (C.D. Ill. Oct 21, 2015)).  These cases stand for the proposition that where there is insufficient evidence to

establish that a service dog is medically necessary, consideration of the need for a service dog is properly excluded from the residual functioning capacity assessment. Even so, the ALJ in this case considered Plaintiff's need for a service dog as part of the assessment and concluded that her functional limitations did not require her to have a service dog in order to work. ECF No. 8-12 at 23.

Recently, the Fourth Circuit observed that "the medical necessity test . . . appears to be in tension with the requirement that the [residual functioning capacity assessment] be based on all the relevant medical *and other evidence* found in the record." *Shue*, 2024 WL 2827936, at *3 (emphasis in original) (internal quotation marks and citation omitted). Without resolving whether the medical necessity test is the appropriate analytical tool, the Fourth Circuit affirmed the district court's judgment after noting that the claimant "failed to present sufficient evidence -- medical or nonmedical -- of her need for the service dog in the workplace." *Id.* at *3. The Fourth Circuit also found that the claimant had not challenged decisions of the United States Supreme Court and the SSA regarding the inapplicability of a reasonable accommodation analysis in disability determinations. *Id.* at *4.

In *Cleveland* v. *Policy Management Systems Corporation*, the Supreme Court explained that social security disability claims differ from claims under the ADA in part because the SSA "does *not* take the possibility of 'reasonable accommodation' into account" when making disability findings. 526 U.S. at 803 (emphasis in original); *see also Fox* v. *Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); Social Security Rulings (SSR) 00-1c, 2000 WL 5889, 65 Fed. Reg. 1215, 1218 (S.S.A. Jan. 7, 2000); SSR 11-2p, 2011 WL 4055665, at *9 (S.S.A. Sept. 12, 2011). Accordingly, when an ALJ evaluates whether a claimant can do past relevant work as it is generally performed, or perform other work in the national economy, the ALJ does "not

consider whether [the claimant] could do so with accommodations, even if an employer would be required to provide reasonable accommodations" under the ADA. SSR 11-2p, 2011 WL 4055665, at *9. One narrow exception is where a claimant's former employer "actually made the accommodation" in a past job, and the issue being addressed is whether the claimant can perform that past work as it was "actually performed." SSR 11-2p, 2011 WL 4055665, at *9. Here, however, Plaintiff did not use a service dog during any of her past relevant work, and, in any event, the ALJ did not find that Plaintiff could perform prior work as she actually performed it. ECF No. 8-3 at 31-32.

In sum, the ALJ's factual findings are supported by substantial evidence. That is, there is sufficient "relevant evidence as a reasonable mind might accept as adequate to support" her conclusion. *Biestek*, 587 U.S. at 103. Accordingly, those factual findings are conclusive. 42 U.S.C. § 405(g). This, together with the fact that the ALJ assessed the relevant evidence, engaged in the proper analysis, and articulated the rationale for her decision, means the Court must affirm the Commissioner's decision. *Sterling Smokeless Coal Co.*, 131 F.3d at 439-440.

B.   **Mental Limitations**

Plaintiff also argues that the ALJ improperly discounted her mental limitations based on the absence of objective evidence. ECF No. 9-1 at 7, 15-17. When making disability determinations, an ALJ must consider the claimant's symptoms and the extent to which such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). While the ALJ will consider the claimant's statements about symptoms, such statements "will not alone establish that [the claimant is] disabled." *Id.* For a claimant to succeed, there must first be objective medical evidence showing the existence of a medical impairment that could *reasonably be expected to produce* the pain or

other symptoms alleged. *Craig*, 76 F.3d at 591-595 (emphasis added). Objective evidence of the pain or other alleged symptom itself is not required, as a subjective phenomenon often will not be objectively verifiable. *Id.* at 594.

If this first step is satisfied, the ALJ will then evaluate the intensity and persistence of the claimant's symptoms and the extent to which they affect the claimant's ability to work. *Id.* at 595 (citing 20 C.F.R. § 404.1529(c)). The ALJ does so by considering "all of the available evidence" including medical and nonmedical sources, medically acceptable clinical and laboratory diagnostic techniques, information about the claimant's prior work record, as well as the claimant's statements, which are evaluated "in relation to the objective medical evidence and other evidence," considering "whether there are any inconsistencies . . . and the extent to which there are any conflicts." 20 C.F.R. § 404.1529(c). "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." *Craig*, 76 F.3d at 595.

Plaintiff argues that the ALJ erred by failing to consider all medical evidence, relying instead on the absence of objective evidence in reaching its decision. ECF No. 9 at 7. Plaintiff specifically points to *Lewis* v. *Berryhill*, a case in which the Fourth Circuit cautioned that an "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." 858 F.3d 858, 869 (4th Cir. 2017) (internal quotation marks and citation omitted). Plaintiff also relies on *Shelley C.* v. *Comm'r of Soc. Sec. Admin.*, where the Fourth Circuit extended a prior holding that ALJs cannot "rely upon the absence of objective medical evidence to discredit a claimant's subjective complaints regarding symptoms of . . . [a] disease that does

not produce such evidence" to depression and chronic depression. 61 F.4th 341, 361 (4th Cir. 2023) (emphasis omitted) (internal quotation marks and citation omitted). Because no laboratory test has yielded results of sufficient sensitivity and specificity to be used as a diagnostic tool for major depressive disorder, and because symptoms caused by major depression can vary from person to person, the Court concluded that symptoms of major depressive disorder are "entirely subjective, determined on a case-by-case basis." *Id.* (emphasis omitted) (internal quotation marks and citation omitted). Accordingly, in such cases, "subjective statements from claimants should be treated as evidence substantiating the claimant's impairment." *Id.* at 362 (internal quotation marks and citation omitted).

In support of her argument, Plaintiff points to the following excerpts from the ALJ's decision:

> At the hearing, [Plaintiff] testified that oftentimes she was so depressed she could not do anything (Hearing Testimony). This is not supported by the objective medical evidence, however. She told her treatment providers that she was travelling to Louisiana and helping out family members (Ex. 18F, 20F). She is considering obtaining a pilot's license. Treatment notes show generally stable mental status findings consistent with the above residual functional capacity (Ex. 14F).
> 
> * * *
> 
> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence and the opinions of record.

ECF No. 8-12 at 23, 26.

Contrary to Plaintiff's contentions, the ALJ did not discount her mental limitations based on the absence of objective evidence. Rather, as the Commissioner correctly notes, the ALJ found that Plaintiff's own subjective reports of improvement with treatment and independent daily activities were inconsistent with the disabling limitations she alleged. Indeed, the ALJ supported the two statements at issue with a discussion of Plaintiff's own reports and explained

that the residual functioning capacity was "supported by the objective medical evidence," not that Plaintiff's statements were being discounted because the objective evidence did not validate them. *Id.* As this Court has held, an ALJ may weigh a claimant's subjective complaints against the rest of the record. *E.g.*, *Krista M.* v. *Kijakazi*, Civil Action No. MJM-21-2474, 2023 WL 2500306, at *8 (D. Md. Mar. 14, 2023) (finding the ALJ properly discounted opinions that were based largely on plaintiff's complaints and were inconsistent with much of the record); *Lasharne W.* v. *Comm'r*, Civil Action No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (noting that weighing a claimant's subjective complaints against prior statements and medical records "remains permissible under *Shelley C.*").

Here, it does not appear that the ALJ cherry-picked facts to support a finding of nondisability. The ALJ appropriately considered Plaintiff's symptoms in relation to the rest of the evidence. *See Craig*, 76 F.3d at 595 (stating that a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence"). As the Commissioner notes, the ALJ acknowledged Plaintiff's reports that she had difficulty sleeping and concentrating, experienced panic attacks, and had external stressors that sometimes worsened her symptoms (ECF No. 8-12 at 20-22), while also recognizing that Plaintiff reported meaningful improvement with therapy and medication (ECF Nos. 8-11 at 248-249, 261; 8-12 at 23; and 8-16 at 99, 101-102). In sum, the ALJ properly "balance[d] the record evidence" by making reasonable factual findings that did not "dismiss" Plaintiff's subjective complaints "based entirely upon the belief that they were not corroborated by the record's medical evidence." *Shelley C.*, 61 F.4th at 360 (emphasis omitted).

Lastly, to the extent Plaintiff disagrees with the ALJ's consideration of the evidence, her argument amounts to a request for this Court to reweigh evidence, something that is not

14

permissible. *E.g.*, *Fiske* v. *Astrue*, 476 Fed. Appx. 526, 527 (4th Cir. 2012). Because the ALJ's decision complies with the governing legal standards and is supported by substantial evidence, this Court must affirm.

**IV.     Conclusion**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is denied and the Commissioner's decision is affirmed. A separate Order follows.


Date:  July 9, 2024                                            /s/
                                                    Erin Aslan
                                                    United States Magistrate Judge